IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHAD PERKINS, individually and on behalf of all others similarly situated, )<br><br>Plaintiff, )<br><br>v. )<br><br>MATCH GROUP, INC., d/b/a OKCUPID, )<br><br>Defendant. ) | Case No.: 1:17-cv-2988<br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiff, Chad Perkins, individually and on behalf of all others similarly situated, through his undersigned counsel, alleges for his Class Action Complaint against Defendant, Match Group, Inc., d/b/a OkCupid, based upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including the investigation conducted by his counsel as follows:

### NATURE OF THE ACTION

1. This action arises from Defendant's practice of enticing the users of its online dating site, OkCupid, to pay a premium to connect with OkCupid "A-List" users who have "liked" the user's profile.

2. After paying a fee of between $9.99 and $19.99 per month, users routinely learn that most if not all of the users who like them have inactive accounts or "dead" accounts and, thus, are not viable dating options.

3. The above-described practices, alleged in further detail below, give rise to Plaintiff's and the putative class' claims for violation of the Illinois Dating Referral Services Act,

815 ILCS 615/1 *et seq*. (Count I), violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq* (Count II), breach of contract (Count III) and unjust enrichment (Count IV).

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2), as this is a class action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which members of the class, which number in excess of 100, are citizens of states different from Defendant.

5. Jurisdiction over Defendant is proper under 735 ILCS 5/2-209(b)(4) (corporation doing business within this State), and Section 2-209(c) (any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States). 735 ILCS 5/2-209(b)(4), and (c).

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the claim occurred in this district.

## PARTIES

7. Plaintiff, Chad Perkins ("Plaintiff" or "Mr. Perkins"), is a natural person domiciled in North Aurora, Illinois. Plaintiff is a member of the putative class defined herein.

8. Defendant Match Group, Inc. ("Match Group") is a corporation incorporated under the laws of Delaware with its principal place of business in Dallas, Texas. Match Group is a provider of online dating services, operating a portfolio of over 45 brands, including Match, Tinder, PlentyOfFish, Meetic, OkCupid, Pairs, Twoo, OurTime, BlackPeopleMeet and LoveScout24. OkCupid is the site used by Plaintiff and the class defined herein.

## BACKGROUND

9. Match Group's dating service segment revenue is primarily derived directly from users in the form of recurring membership fees, which typically provide unlimited access to a bundle of features for a specific period of time, and the balance from à la carte features, where users pay a fee for a specific action or event. Each of its brands, including OkCupid, offers a combination of free and paid features targeted to its unique community. In addition to direct revenue from our users, Match Group generates indirect revenue from online advertising.

10. Match Group's products, including OkCupid, enable users to establish a profile and review other people's profiles without charge. However, each product also offers additional features, some of which are free, and some of which require payment depending on the particular product.

11. In general, access to Match Group's premium features requires a paid membership, which is typically offered in packages (primarily ranging from one month to six months), depending on the product and circumstance. Prices differ meaningfully within a given brand by the duration of membership purchased, by the bundle of paid features that a user chooses to access, and by whether or not a customer is taking advantage of any special offers.

12. In addition to paid memberships, many of Match Group's products offer the user the ability to promote themselves for a given period of time, or to review certain profiles without any signaling to the other members, and these features are offered on a pay-per-use basis. The precise mix of paid and premium features is established over time on a brand-by-brand basis.

13. Among the paid memberships Match Group sells is the "A-List" feature offered on its OkCupid site, www.OkCupid.com, through which users may access the profiles of other users who have purportedly "liked" their profiles or otherwise expressed an interest in them.

14. The fee for viewing these A-List profiles is $9.99, $14.99 or $19.99 per month for six-, three- and one-month packages, respectively, which Match Group bills to the user's credit card, debit card or other electronic payment method.

15. After paying the required fee, users routinely discover that the profiles of the persons who purportedly liked them are inactive or "dead" profiles and not associated with anybody whom they can date or even communicate.

16. When users complain, Match Group offers a uniform explanation for the multitude of dead profiles they encounter, falsely stating that the issue is the result of software programming issues or "bugs."

## FACTS RELATING TO PLAINTIFF

17. On or about December 11, 2016, Plaintiff created a free online profile on the OkCupid.com website for the purpose of dating.

18. Immediately thereafter, Plaintiff began to receive messages through the OkCupid application on his cellphone stating that numerous other OkCupid users had liked his profile.

19. The above-described messages represented that Plaintiff could learn the identities of the users who liked him by paying a fee. Examples of such messages are depicted below:







20. In response to the above and similar messages Plaintiff received from Match Group, on or about February 5, 2017, Plaintiff paid $44.99 to gain access to the advertised A-List service on OkCupid.com.

21. Shortly thereafter, upon reviewing the profiles of the individuals whose identities were previously hidden from free OkCupid subscribers, Plaintiff discovered that most if not all of these people were associated with inactive or "dead" accounts, making interaction or dating impossible.

22. On or about February 18, 2017, Plaintiff sent an email to Match Group complaining about this problem, to which Match Group responded that the bad profiles were the result of a software programming error or "bug." Specifically, Match Group's form email message to Plaintiff stated in relevant part:

> It does look like the reported Likes number was a bug on our end, that included Likes from accounts that have subsequently been removed from OkCupid. Our developers are aware of the issue, and

are working on a fix so this doesn't happen going forward. It's definitely not something we did on purpose, and I'm sorry to hear that this bug affected you at all.

23. Upon information and belief, the above message was not so much an explanation as an effort to conceal the fraud perpetrated on Plaintiff and the class. At the very least, Defendant knew of the flaw in its programming but nonetheless collected premium payments from Plaintiff and the class, thereby cheating them out of the amounts they paid for the A-List service, and caused them the other forms of damage alleged herein.

## CLASS ACTION ALLEGATIONS

24. This action satisfies the prerequisites for maintenance as a class action provided in Fed. R. Civ. P. 23(a), as set forth below.

25. *Class Definition.* Plaintiff brings this action individually and on behalf of the following class of similarly situated persons (the "Class"), of which Plaintiff is a member:

> All natural persons domiciled in the United States or its territories who, within the applicable statutes of limitation, paid Match Group amounts for its premium OkCupid "A-List" service during such time as a programming error, software malfunction, bug or similar factor caused the reported number of "likes" to exceed the actual number of persons who had liked the subscriber's profile.

Excluded from the Class are Defendant and any of its respective officers, directors or employees, the presiding judge, Class counsel and members of their immediate families, and persons or entities who timely and properly exclude themselves from the Class.

26. *Numerosity.* The members of the Class are so numerous and geographically dispersed throughout the United States such that joinder of all members is impracticable. Plaintiff believes that there are thousands of persons in the Class. The exact number and identity of Class members is unknown to Plaintiff at this time and can only be ascertained from information and records in the possession, custody or control of Defendant.

27. *Commonality.* There are questions of law or fact common to the Class including, *inter alia*, the following:

    a. whether a software programming error or bug artificially inflated the number of OkCupid users, if any, who had "liked" the profiles of Plaintiff and other members the Class;

    b. whether the Illinois Dating Referral Services Act, 815 ILCS 615/1 *et seq.*, applies to the claims of Plaintiff and members of the Class and/or entitles them to relief;

    c. whether the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*, applies to the claims of Plaintiff and members of the Class and/or entitles them to relief;

    d. whether a contract existed between Defendant on the one hand and Plaintiff and the Class on the other and the terms of that contract;

    e. whether Plaintiff and the Class conferred a benefit on Match Group when they paid for their A-List memberships and whether it would be unjust for it to retain such benefits under the circumstances alleged herein;

    f. whether the Court has subject matter jurisdiction and whether venue in this district is proper;

    g. whether Plaintiff and the members of the Class are entitled to their damages, including treble damages, and the appropriate measure thereof; and

    h. whether equitable or injunctive relief is appropriate.

28. *Typicality.* The claims of Plaintiff are typical of the claims of the Class alleged herein. Plaintiff and other members of the Class are all persons who paid Match Group amounts for its premium OkCupid "A-List" service during such time as a programming error, software

malfunction, bug or similar factor caused the reported number of "likes" to exceed the actual number of persons who had liked the subscriber's profile.

29. *Adequacy.* Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained counsel who are competent and experienced in the prosecution of complex and class action litigation. The interests of Plaintiff are aligned with, and not antagonistic to, those of the Class.

30. *Fed. R. Civ. P. 23(b)(2) Requirements.* The prerequisites to maintaining a class action for injunctive and equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) exist, as Defendant has acted or has refused to act on grounds generally applicable to the Class thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole.

31. Defendant's actions are generally applicable to the Class as a whole, and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Class as a whole.

32. Defendant's uniform common course of conduct alleged herein makes declaratory relief with respect to the Class as a whole appropriate.

33. *Fed. R. Civ. P. 23(b)(3) Requirements.* This case satisfies the prerequisites of Fed. R. Civ. P. 23(b)(3). The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy.

34. The likelihood that individual members of the Class will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially in view of the relatively modest amount of monetary, injunctive and equitable relief at issue for individual Class members.

35. This action will be prosecuted in a fashion to ensure the Court's able management of this case as a class action on behalf of the Class.

## COUNT I

**(Violation of the Illinois Dating Referral Services Act, 815 ILCS 615/1 *et seq*.)**

36. Plaintiff repeats and realleges the allegations of Paragraphs 1 through 35, *supra*, as though fully stated herein.

37. At all times material hereto, there was in full force and effect an act commonly known as the Illinois Dating Referral Services Act, 815 ILCS 615/1 *et seq*. ("DRSA").

38. OkCupid is a dating referral service insofar as it is a "computer dating" service primarily intended to introduce or match adult persons for social or romantic encounters. 815 ILCS 615/5.

39. Defendant is a dating service enterprise insofar as it is a business entity offering dating referral services to the public for compensation. *Id.*

40. Section 15 of the DSRA requires all provisions, requirements, and prohibitions that are mandated thereby to be contained in any written dating referral services contract provided to Plaintiff and the Class. *See* 815 ILCS 615/15.

41. Notwithstanding the foregoing, Defendant's contracts with Plaintiff and the Class, if any, failed to contain any reference to the DSRA or its provisions, requirements or prohibitions.

42. Section 20 of the DSRA requires every contract for dating referral services to provide where, as here, the provider does not maintain a customer service facility, that the customer shall have 7 calendar days in which to cancel the contract and receive a full refund of all monies paid. *See* 815 ILCS 615/20(a)(1) ("A customer . . . who does not purchase a contract at an existing

- 10 -

facility, shall have 7 calendar days in which to cancel the contract and receive a full refund of all monies paid.").

43. Notwithstanding the foregoing, Defendant's contract with Plaintiff, if any, failed to inform Plaintiff of his seven-day right to cancel under the DSRA.

44. Section 30 of the DSRA provides in relevant part, "No contract for dating referral services shall require payments or financing over a period in excess of 3 years from the date the contract is entered into . . . ." 815 ILCS 615/30(a).

45. Section 30 further provides in relevant part, "The initial term of services to be rendered under the contract may not extend over a period of more than 2 years from the date the parties enter into the contract . . . ." *Id.*

46. Notwithstanding the prohibitions of Section 30, *supra*, Defendant's contract, if any, with Plaintiff and the Class commits them to indefinite terms of service, automatically renewing their memberships until they cancel.

47. Section 40 of the DSRA provides in relevant part:

> (a) Unfair or deceptive acts and practices are prohibited, including but not limited to: use of coercive sales tactics; misrepresentation of the quality, benefits or nature of services; misrepresenting the qualifications or number of other members participating in the service; or misrepresenting the success the enterprise has had in making matches or referrals favorable to its customers.
>
> (b) Any contract for dating referral services entered into in reliance upon any false, fraudulent, or misleading information, representation, notice, or advertisement of the dating referral enterprise or any of its employees or agents shall be void and unenforceable.

815 ILCS 615/40.

48. In contravention of Section 40, *supra*, Defendant marketed its A-List service to Plaintiff and the Class that it knew or should have known had the capacity to mislead them

regarding the number of other users who were "liked" their profiles but whose identities they could not learn without paying for the A-List service.

49. Alternatively, notwithstanding the provisions of Section 40, *supra*, Defendant omitted the information necessary to make its representations regarding the number of users who had purportedly "liked" the profiles of Plaintiff or other members of the Class not false or misleading—*i.e.*, that a software bug had caused the number of "likes" to be artificially inflated.

50. Section 45 of the DSRA provides:

> Any customer injured by a violation of this Act may bring an action for the recovery of damages. Judgment may be entered for 3 times the amount at which the actual damages are assessed, plus costs, and reasonable attorney's fees.

815 ILCS 615/45.

51. As a result of the foregoing, Plaintiff and the Class are entitled to equitable relief including, *inter alia*, a finding that the contracts they entered into are void and unenforceable, and an award of three times their actual damages to be proven at trial, plus costs and reasonable attorneys' fees.

## COUNT II

**(Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq*.)**

52. Plaintiff repeats and realleges the allegations of Paragraphs 1 through 35, *supra*, as though fully stated herein.

53. At all times material hereto, there was in full force and effect an act commonly known as the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq*. ("ICFA").

54. Plaintiff and the Class are persons within meaning of Section 1(c) of ICFA, insofar as they are natural persons. 815 ILCS 505/1(c).

55. The OkCupid memberships at issue herein are merchandise within the meaning of Section 1(b) of ICFA, insofar as they are goods, commodities, intangibles or services. 815 ILCS 505/1(b).

56. Plaintiff and the Class are consumers within the meaning of Section 1(e) of ICFA, insofar as they are persons who purchased or contracted for the purchase of merchandise for his personal use. 815 ILCS 505/1(e).

57. Plaintiff and the Class' purchase of OkCupid A-List memberships are sales within the meaning of Section 1(d) of ICFA, insofar as they are sales, offers for sale or attempts to sell merchandise for cash or on credit. 815 ILCS 505/1(d).

58. The acts and practices of Defendant alleged herein regarding the marketing, advertising and/or sale of OkCupid A-List memberships to Plaintiff and the Class constitute trade and/or commerce within the meaning of Section 1(f) of ICFA. *See* 815 ILCS 505/1(f).

59. The aforesaid acts and practices of Defendant constitute unfair or deceptive acts or practices prohibited by Section 2 of ICFA, including but not limited to the use or employment of deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of material fact, with intent that Plaintiff and the Class rely thereon. *See* 815 ILCS 505/2.

60. The aforesaid acts and practices of Defendant further fall within the practices prohibited by Section 2 of the Uniform Deceptive Practices Act incorporated by reference in 815 ILCS 505/2, *supra*.

61. Specifically, *inter alia*, Defendant marketed, advertised and/or sold A-List memberships to Plaintiff and the Class under the false pretense that more OkCupid users "liked" them than the number, if any, who actually had. Defendant intended that Plaintiff and the Class rely on this false pretense as evidenced by, *inter alia*, the frequency and content of the advertisements for the A-List product described herein and examples of which are depicted in Paragraph 19, *supra*.

62. Moreover, in the alternative, Defendant concealed, suppressed or omitted the material fact that a software programming error or bug artificially inflated the number of OkCupid users, if any, who had "liked" the profiles of Plaintiff and the Class.

63. As a direct and proximate result of the foregoing, Plaintiff and the Class purchased A-List memberships from Defendant that they would not have purchased had the true facts been known to them. Alternatively, Plaintiff and the Class lacked the information necessary to make an informed choice regarding their decision to purchase such memberships, causing them to pay a monthly service fee for an OkCupid membership that is otherwise free.

64. As a result of the foregoing, Plaintiff and the Class have been damaged in an amount to be proven at trial.

## COUNT III

### (Breach of Contract)

65. Plaintiff repeats and realleges the allegations of Paragraphs 1 through 35, *supra*, as though fully stated herein. This count is pled in the alternative to Counts I, II and IV herein, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

66. At all times material hereto, there existed a contract under terms of which Defendant agreed to accept payment of a monthly fee by Plaintiff and the Class in exchange for

access to its A-List service, which would purportedly allow them to view the profiles of other users who had "liked" their profiles.

67. Plaintiff and the Class performed their duties under the aforesaid contract by paying the required monthly fee in full.

68. Notwithstanding the foregoing, Defendant provided Plaintiff and the Class with access to a list of purported OkCupid A-List members whose profiles were inactive or "dead."

69. As a result of the foregoing, Plaintiff and the Class have been damaged in an amount to be proven at trial.

## COUNT IV

### (Unjust Enrichment)

70. Plaintiff repeats and realleges the allegations of Paragraphs 1 through 35, *supra*, as though fully stated herein. This Count is plead in the alternative to Count III, *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

71. Plaintiff and the Class conferred a benefit on Defendant by paying monthly fees for access to its A-List service that it either knew or omitted to disclose contained the profiles of inactive or "dead" users.

72. Defendant appreciated the benefits of such payments in the form of revenue received from Plaintiff and the Class in the amount of their monthly A-List membership fees paid.

73. Defendant's acceptance and retention of the aforesaid benefits under the circumstances alleged herein would be inequitable absent the repayment of such amounts to Plaintiff and the Class.

74. As a result of the foregoing, Plaintiff and the Class have been damaged in an amount to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of members of the Class, prays for judgment in their favor and against Defendant and for the following relief:

A. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23, certifying the Class defined herein and designating Plaintiff as representative of the Class and his undersigned counsel as Class counsel;

B. Awarding Plaintiff and the Class (1) their actual damages, (2) such treble damages as the Court may allow, and (3) the costs of this action together with reasonable attorneys' fees as determined by the Court;

C. Awarding Plaintiff and the Class all allowable pre- and post-judgment interest on the foregoing awarded damages;

D. Awarding Plaintiff and the Class equitable relief including, *inter alia*, a finding that the contracts they entered into are void and unenforceable and disgorgement of Defendant's ill-gotten gains;

E. Granting appropriate injunctive and declaratory relief; and

F. Awarding such other and further available relief and any other relief the Court deems just and appropriate.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

Date: April 20, 2017 Respectfully submitted,

CHAD PERKINS

By:   s/ William M. Sweetnam
William M. Sweetnam
SWEETNAM LLC
100 North La Salle Street, Suite 2200
Chicago, Illinois 60602
(312) 757-1888
wms@sweetnamllc.com

*Attorneys for Plaintiff and the Class*